13

FILED *re*

JAN 10 2012

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 10-63847-B-7 |
| Nor See, | ) | |
| Debtor. | ) | |
| | ) | |
| American Express Bank, FSB, | ) | Adversary Proc. No. 11-1067 |
| Plaintiff, | ) | DC No. JMO-1 |
| v. | ) | |
| Nor See, | ) | |
| Defendant. | ) | |

**MEMORANDUM DECISION REGARDING MOTION
FOR ENTRY OF DEFAULT JUDGMENT**

John M. O'Donnell, Esq., appeared on behalf of the plaintiff and moving party,
American Express Bank, FSB.

No appearance was made by the debtor, Nor See.

Before the court is a motion filed by American Express Bank, FSB

("Plaintiff") for entry of a default judgment (the "Motion") against the

debtor/defendant, Nor See ("Debtor"). The Debtor did not file an opposition or

appear at the noticed hearing. The Plaintiff's complaint prays for a judgment

against the Debtor in the amount of $19,055.16 based on prepetition charges

made to the Debtor's credit card, and asks for a declaration that some portion of

the claim is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).[1] The

---

[1]Unless otherwise indicated, all chapter, section and rule references are to the
Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy
Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the
effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of

1  Debtor's default has already been entered.  However, based on the evidence
2  presented in support of the Motion, the court cannot find that each charge to the
3  Debtor's credit card was made with fraudulent intent.  Accordingly, the Motion
4  will be granted in part.

5  **Background and Findings of Fact.**

6         This bankruptcy was filed as a voluntary petition on November 30, 2010.
7  Based on the Debtor's schedules, the Debtor then had unsecured, nonpriority
8  debts totaling $47,240, all of which appear to be credit card debt.  The Debtor is
9  married with four dependents, disabled, and receiving social security.   According
10 to Schedules I and J, the Debtor's monthly income was, at the time of filing, $845
11 against monthly expenses of $1,842.78.  The schedules do not disclose any
12 outside source of support, or any income for the Debtor's nonfiling spouse.

13        **The Credit Card Activity.**  In July 2009, the Plaintiff issued a credit card
14 to the Debtor with an approved credit limit of $10,000 (the "Credit Card").  This
15 adversary proceeding relates to charges made to the Credit Card for the billing
16 periods beginning April 23, 2010 through August 24, 2010.[2]  The Motion is
17 supported by copies of the monthly billing statements for the Credit Card
18 account.  The Debtor's name is the only name on the account and the court can
19 infer, absent evidence to the contrary, that all of the transactions reflected in the
20 monthly statements were initiated by, or with the permission and consent of, the
21 Debtor.

22        At the beginning of the April-May billing period, the balance due on the
23 Credit Card was $749.58.  Between April 23 and May 17, the Credit Card was
24 used to make six consumer purchases totaling $203.53.  On May 5, the minimum

25

26
   ─────────────────────
27 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

28        [2]Unless otherwise stated, all subsequent references to dates herein are in
   calendar year 2010.

2

payment then due on the Credit Card was made in the amount of $50.  However, on May 18 and 19, the Credit Card was used to purchase six round-trip airplane tickets for family members to travel from Fresno, California, to Charlotte, North Carolina.  The cost of those tickets plus taxes and fees was $2,365.80.  From May 19 to the end of the billing period, the Credit Card was again used for normal consumer purchases totaling $114.80.  At the end of the billing period, the balance on the Debtor's account was $3,399.23, still well within the credit limit for the Credit Card.

Between May 24 and June 23, the Credit Card was used to make five consumer purchases totaling $326.42 and a payment of $70 was made to the account.  By the end of the May-June billing period, the balance on the Debtor's account only increased by $366.48, including the monthly finance charge.

During the next billing period from June 24 to July 23, the Credit Card activity increased.  During this time, the Credit Card was used to fund six consumer purchases totaling $195.43 and one payment was made in the amount of $74.  These transactions appear to be normal transactions within the anticipated usage and credit limit of the Credit Card.  However, on June 30 and July 1, the Credit Card was used to make two extraordinary payments to Michael Automotive in the amounts of $5,000 and $10,500, respectively.  There is nothing in the record to explain what these charges were for.  The Plaintiff correctly points out, based on the Debtor's schedules, that the Debtor does not own an automobile and does not report the loss of an automobile at any time after these charges were made.  The Debtor's schedules do not list Michael Automotive as a creditor, nor do they show any prepetition payments made to Michael Automotive on account of an antecedent debt owed by the Debtor.  These transactions far exceeded the credit limit on the Credit Card.  Given the fact that the charges were made in exactly even dollar amounts, the court can infer that the charges were not related to the purchase of parts or repairs for an

3

1 | automobile. The court can only conclude that these charges reflect payments
2 | toward the purchase of someone else's automobile or the reduction of someone
3 | else's account with Michael Automotive.

4 | The next billing period for the Credit Card account ran from July 24 to
5 | August 24. During that time, the Credit Card activity again returned to normal.
6 | It was used for five purchases of consumer items totaling $249.18 and one
7 | payment was made in the amount of $392. Without considering the monthly
8 | finance charge, the Debtor's payment during this period exceeded the new
9 | charges.

10 | The final three billing periods before the bankruptcy filing ran from
11 | August 25 to November 23. During this time, no purchases were made with the
12 | Credit Card. One electronic payment was made in the amount of $200 on
13 | September 8. The bankruptcy was filed on November 20.

14 | **Issue Presented.**

15 | "Credit card" dischargeability complaints are frequently filed in the
16 | bankruptcy courts. The debtors/defendants often do not respond, for economic
17 | reasons or otherwise, in which case the "dischargeability" question ultimately
18 | comes before the court in the form of a motion for entry of a default judgment.
19 | The fundamental issue presented here is whether the Plaintiff has made an
20 | adequate showing that the Debtor's prepetition use of the Credit Card constitutes
21 | a fraud within the meaning of § 523(a)(2)(A).

22 | **Analysis and Conclusions of Law.**

23 | **Judgement by Default.** Default judgments are governed by Federal Rule
24 | of Civil Procedure 55, which is made applicable to this adversary proceeding by
25 | Federal Rule of Bankruptcy Procedure 7055. The entry of a default judgment in
26 | an adversary proceeding is a two-step process: (1) entry of the party's default,
27 | and (2) entry of a default judgment. FED. R. CIV. P. 55(a) & (b); *Brooks v. United*
28 | *States*, 29 F. Supp. 2d 613, 618 (N.D. Cal. 1998), *aff'd*, 162 F.3d 1167 (9th Cir.

1998). The bankruptcy court is given broad discretion to enter a default

judgment in an adversary proceeding, however, the plaintiff is not entitled to such

judgment as a matter of right. *Cashco Fin. Servs., Inc. v. McGee (In re McGee)*,

359 B.R. 764, 771 (9th Cir. BAP 2006) (citing *Kubick v. FDIC (In re*

*Kubick)*, 171 B.R. 658, 659–60 (9th Cir. BAP 1994)). The court is permitted, but

is not required, to draw inferences in a default judgment context. "In order to do

justice, a trial court has broad discretion to require that a plaintiff prove up even a

purported *prima facie* case by requiring the plaintiff to establish the facts

necessary to determine whether a valid claim exists that would support relief

against the defaulting party." *In re McGee*, 359 B.R. at 773 (emphasis omitted)

(citing *Wells Fargo Bank v. Beltran (In re Beltran)*, 182 B.R. 820, 823 (9th Cir.

BAP 1995) (entry of default does not automatically entitle a plaintiff to a default

judgment, regardless of the general effect of the entry of a default to deem

well-founded allegations as admitted); *Quarré v. Saylor (In re Saylor)*, 178 B.R.

209, 212 (9th Cir. BAP 1995) (trial court directed the plaintiff to submit evidence

of a *prima facie* case in support of a default judgment)).

      The court's analysis of any adversary proceeding that culminates in the

entry of a judgment by default should begin with the pleadings. Pursuant to

Federal Rule of Civil Procedure 8(a)(2) (made applicable to adversary

proceedings by Federal Rule of Bankruptcy Procedure 7008), the pleading must

state a "short and plain statement of the claim showing that the pleader is entitled

to relief." A complaint alleging fraud must plead the circumstances "with

particularity." FED. R. CIV. P. 9(b) (made applicable to adversary proceedings by

FED. R. BANKR. P. 7009). The plaintiff's obligation to show its "'entitle[ment] to

relief' requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007). The court has an affirmative obligation to review the

underlying factual allegations and supporting evidence to make sure the plaintiff

5

has pleaded, and can prove its *prima facie* case. In light of the new pleading standard established by the U.S. Supreme Court in *Twombly*, 550 U.S. 544, and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the plaintiff must plead more than a recitation of the underlying statute with the mere possibility of damages. The bankruptcy court cannot accept as true legal conclusions couched as factual allegations. *See Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

The potential for abuse in the filing of dischargeability complaints and the more rigid pleading standards applicable to fraud claims underscores the importance of judicial scrutiny of both the complaints, and the ensuing default proceedings, filed against debtors who often cannot defend themselves. *See AT&T Universal Card Servs. Corp. v. Grayson (In re Grayson)*, 199 B.R. 397, 403 (Bankr. W.D. Mo. 1996). The tension here was thoughtfully considered by one court in a recent unpublished opinion:

> A debtor who files leaves all non-exempt assets with a trustee, and seeks to emerge with only his future income, his exempt assets, and a discharge from personal liability. If that debtor is sued by a creditor claiming its debt cannot be discharged, the choice is either to fight the charge, though lacking the resources to pay a lawyer to do so, or simply to settle with the creditor, often agreeing to reaffirm the debt. And this is motivated often by the simple fact that the debtor cannot afford the fight—never mind whether the allegations are well taken or not.

*FIA Card Servs. v. Travis (In re Travis)*, No. 10-5118-C, 2011 WL 1334387, at *2 (Bankr. W.D. Tex. Apr. 7, 2011) (citing *In re Grayson*, 199 B.R. at 403).

**The "Fraud" Exception to Discharge Under § 523(a)(2)(A).** To balance the fresh start afforded to honest debtors through a discharge of debts, the Bankruptcy Code excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud." § 523(a)(2)(A). A creditor must prove actual fraud by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). The common law elements of actual fraud are

6

(1) the debtor made representations to the creditor; (2) the debtor knew the representations were false at the time they were made; (3) the debtor made the representations with the intention and purpose of deceiving the creditor; (4) the creditor relied on the representations; and (5) the creditor sustained the alleged loss and damage as the proximate result of the representations having been made. *Citibank v. Eashai (In re Eashai)*, 87 F.3d 1082, 1086 (9th Cir. 1996).

For some consumer debts, the nondischargeabililty question is settled by a statutory, but rebuttable, presumption. "[C]onsumer debts owed to a single creditor and aggregating more than $600 for luxury goods or services incurred by an individual debtor on or within 90 days before [the commencement of the bankruptcy] are presumed to be nondischargeable." § 523(a)(C)(i)(I). Cash advances made to a credit card may also be declared nondischargeable by rebuttable presumption. "[C]ash advances aggregating more than $875 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within 70 days before [the commencement of the bankruptcy] are presumed to be nondischargeable." § 523(a)(C)(i)(II).

Here, the Plaintiff seeks a determination that the Debtor's use of the Credit Card, as summarized above, in the months leading up to the bankruptcy, was done under false pretenses. The Plaintiff contends that those charges were made with fraudulent intent and should be excepted from the Debtor's chapter 7 discharge. None of the transactions at issue here fall within the presumption periods prescribed in § 523(a)(2)(C)(i).

**Dischargeability of a Credit Card Debt.** When the debt at issue arises from the use of a credit card, the first, fourth and fifth elements of the fraud claim are generally straightforward. Courts accept the premise that the debtor's use of a credit card constitutes a representation to the creditor of the debtor's intent to repay the debt. *See In re Eashai*, 87 F.3d at 1087. A creditor's reliance on the debtor's representation need only be justifiable, not reasonable, to except a debt

from discharge under § 523(a)(2)(A) of the Bankruptcy Code. *Field v. Mans*,
516 U.S. 59, 61 (1995). Unless the debtor's credit card history is marked by "red
flags," the creditor can establish reliance on the debtor's promise to pay the debt
by simply showing that the debtor paid his or her credit card debts in the past.
*See In re Eashai*, 87 F.3d at 1091. The finding of damages is supported by the
fact that the debt was not repaid and subject to potential discharge in the
bankruptcy proceeding. In a "credit card" dischargeability case, the issues shift
away from the actual representation and focus more on the debtor's state of mind:
knowledge that the representation was false and intent to defraud. With respect
to credit card debt, the Ninth Circuit Bankruptcy Appellate Panel has noted:

> Where purchases are made through the use of a credit card with
> no intention at that time to repay the debt, that debt must be held
> to be nondischargeable pursuant to section 523(a)(2)(A). To hold
> otherwise would be to ignore the plain language of the statute and
> to reward dishonest debtors.

*Citibank v. Dougherty (In re Dougherty)*, 84 B.R. 653, 657 (9th Cir. BAP 1988)
(quoting *Sears Roebuck & Co. v. Faulk (In re Faulk)*, 69 B.R. 743, 753–54
(Bankr. N.D. Ind. 1986)), *abrogated on other grounds by Grogan*, 498 U.S. 279.

In *In re Dougherty*, the Court adopted a nonexclusive list of twelve
objective factors that "trial courts should consider" to determine the debtor's
intent.[3] 84 B.R. at 657 (citation omitted). Since then, the Ninth Circuit has
adopted the *Dougherty* approach for determining if the debtor used his or her
credit card with a subjective intent to deceive. "Since a debtor will rarely admit
to his fraudulent intentions, the creditor must rely on the twelve factors of

---

[3]The twelve *Dougherty* factors are: (1) The length of time between the charges
made and the filing of bankruptcy; (2) whether or not an attorney has been consulted
concerning the filing of bankruptcy before the charges were made; (3) the number of
charges made; (4) the amount of the charges; (5) the financial condition of the debtor at
the time the charges are made; (6) whether the charges were above the credit limit of the
account; (7) whether the debtor made multiple charges on the same day; (8) whether or
not the debtor was employed; (9) the debtor's prospects for employment; (10) financial
sophistication of the debtor;(11) whether there was a sudden change in the debtor's
buying habits; and (12) whether the purchases were made for luxuries or necessities. 84
B.R. at 657 (citation omitted).

1  *Dougherty* to establish the subjective intent of the debtor through circumstantial
2  evidence." *In re Eashai*, 87 F.3d at 1090.

3        The Ninth Circuit has described the *Dougherty* approach as a "totality of
4  the circumstances" theory and has stated, "Under this theory, a court may infer
5  the existence of the debtor's intent not to pay if the facts and circumstances of a
6  particular case present a picture of deceptive conduct by the debtor." *Id.* at 1087.
7  Applying the elements of fraud to the situation of a credit card debt, the Ninth
8  Circuit developed three essential inquiries: (1) Did the card holder fraudulently
9  fail to disclose his intent not to repay the credit card debt; (2) did the card issuer
10 justifiably rely on a representation by the debtor; and (3) was the debt sought to
11 be discharged proximately caused by the first two elements. *Anastas v. Am. Sav.*
12 *Bank (In re Anastas)*, 94 F.3d 1280, 1284 (9th Cir. 1996) (citing *In re Eashai*, 87
13 F.3d at 1088).

14       In *In re Anastas*, the Ninth Circuit clarified that financial condition,
15 *standing alone*, is not a substitute for an actual finding that the debtor intended to
16 deceive the creditor when the charges were incurred. 94 F.3d at 1286. For this
17 reason, the Court explained in *Anastas* that a trial court must not singularly focus
18 on the debtor's ability to repay the debts, but on whether the debtor incurred the
19 debts with an intent not to repay. *Id.* at 1285. The *Anastas* court further clarified
20 that the "intent not to repay" inquiry must generally be applied to each individual
21 charge made to the credit card. *Id.* The court viewed each individual credit
22 transaction as the formation of an unilateral contract in which the card holder
23 promises to repay the debt plus accrued finance charges and the card issuer
24 performs by reimbursing the merchant who accepted the credit card in payment.
25 *Id.*

26      In many credit card cases the inquiry is not whether the card holder
27 lacked an intent to repay *all* of the charges made on the card
because of a fraudulent financial scheme, but rather whether the
card holder lacked an intent to repay when making certain
28 *individual* charges because he planned to shortly discharge them in

9

1  bankruptcy.  This behavior is commonly referred to as "loading
2  up."

3  *Id.* (emphasis in original).

4  **Application to the Facts.**  In *In re Anastas*, the Court held that the
5  necessary element of a representation made by the debtor is present in the implied
6  representation of an intent to perform the unilateral contract by repaying the
7  amount charged.  94 F.3d at 1285.  Thus, when the Debtor used or consented to
8  the use of his Credit Card, he made a representation to the Plaintiff that he
9  intended to repay the debt.  The court is persuaded that the Plaintiff relied on that
10  representation when it paid for the charges made to the Credit Card and it has
11  been damaged by the Debtor's failure to pay the debt.  The remaining questions
12  then are, did the Debtor know he couldn't pay for the charges made to the Credit
13  Card and did he make the representation of payment with the intent to deceive?

14  The central inquiry in determining whether there was a fraudulent
15  representation is whether the card holder lacked an intent to repay at the time he
16  made the charge.  Since a debtor will rarely admit to his fraudulent intentions, the
17  creditor must rely on the twelve factors in *Dougherty* and any other available
18  objective factors to establish the subjective intent of the debtor through
19  circumstantial evidence.  Viewing each Credit Card transaction as a separate
20  unilateral contract, the court must first separate those transactions which appear
21  to be "normal" and within the contemplated usage of the credit card from those
22  which appear to be unusual or extraordinary.

23  Here, almost all of the charges made to the Credit Card during the relevant
24  period appear to be normal purchases within the credit limit of the Credit Card.
25  The Debtor made, or substantially made, the minimum monthly payment due on
26  the Credit Card each month which suggests that the Debtor fully intended to
27  perform the Credit Card agreement, at least with regard to the "normal" usage
28  transactions.  Of particular importance is the fact that the Debtor stopped using

1  the Credit Card altogether approximately three months before the bankruptcy was

2  filed, which shows that the Debtor had no intention of "loading up" the Credit

3  Card account in anticipation of the bankruptcy filing. As to the Debtor's

4  "normal" usage of the Credit Card, the court is not persuaded that the Debtor

5  acted with fraudulent intent.

6       That said, it is clear from the evidence that not all of the charges made to

7  the Credit Card were "normal." Specifically, the court is referring to the two

8  extraordinary and unexplainable credit transactions with Michael Automotive in

9  the amount of $15,500. Based on the facts that these charges far exceeded the

10  credit limit on the Credit Card, and all the charges appear to have been made for

11  the benefit of someone else, at a time when the Debtor had no apparent way to

12  ever repay these charges, the court is satisfied that the Debtor made these charges

13  with the full expectation, or certainly the understanding, that they could and

14  would never be repaid. If the Debtor made these charges knowing that they

15  would never be repaid, then he made them under false pretenses with the intent to

16  defraud the Plaintiff. If the Debtor made these charges without considering the

17  repayment issue, then he acted with a reckless disregard for the truth. A reckless

18  disregard for the truth regarding the intent to repay a debt satisfies the

19  "intentional misrepresentation" element of the fraud claim. *In re Anastas*, 94

20  F.3d at 1286 (citation omitted). Either way, the court is satisfied that the

21  Debtor's use of the Credit Card to make these extraordinary charges within a

22  two-day period rises to the level of actual fraud within the meaning of §

23  523(a)(2)(A).

24       A similar analysis applies to the six airplane tickets purchased with the

25  Credit Card in May 2011. The total amount of these tickets, $2,365.80, was still

26  well within the credit limit of the Credit Card, but the court can infer from the

27  totality of the circumstances that the cost of these tickets could and would never

28  be repaid. The court is not persuaded that the Debtor purchased the airplane

11

1  tickets with actual fraudulent intent, but it does appear that he purchased the

2  tickets with a reckless disregard for the truth that he would not pay for them.

3  **Conclusion.**

4        Based on the foregoing, the court is persuaded that the Debtor knew, at the

5  time the Credit Card was used to make the payments to Michael Automotive

6  ($15,500), that those charges could never be repaid in light of the Debtor's

7  circumstances, including the Debtor's current financial situation. Accordingly,

8  those charges were made with a subjective intent to defraud the Plaintiff and shall

9  be nondischargeable under § 523(a)(2)(A). The court is also persuaded that the

10  Debtor used the Credit Card to purchase the six airplane tickets ($2,365.80) with

11  reckless disregard for the truth of the fact that the debt could never be repaid.

12  Accordingly, the airplane tickets are also nondischargeable. As to the remainder

13  of the charges reflected in the monthly billing statements, the court is not

14  persuaded that those charges were made with the subject intent to defraud the

15  Plaintiff. The Plaintiff's Motion for entry of a default judgment will be

16  GRANTED in part. The Plaintiff shall submit a proposed judgment consistent

17  with this memorandum decision. Plaintiff shall recover its costs and reasonable

18  attorney's fees.

19        Dated:  January  _10_, 2012

20

21

22      W. Richard Lee
    United States Bankruptcy Judge

23

24

25

26

27

28

Nor See, Case No. 10-63847, Adv. Proc. No. 11-1067/DC No. JMO-1

Nor See
41111 Rancho Court
Orosi, CA 93647

Scott Lyons, Esq.
Attorney at Law
1010 W. Main St.
Visalia, CA 93291

John M. O'Donnell, Esq.
Attorney at Law
915 University Ave.
Sacramento, CA 95825

Robert A. Hawkins
Chapter 7 Trustee
1849 N. Helm, #110
Fresno, CA 93727

Office of the U.S. Trustee
U.S. Courthouse
2500 Tulare St., Ste. 1401
Fresno, CA 93721